NORTHWESTERN NATIONAL BANK OF SIOUX FALLS,
Appellant
v.
GILLIS, Respondent

(148 N.W.2d 293)

(File No. 10362. Opinion filed February 2, 1967)

The first question raised in this appeal is whether plaintiff, a duly chartered national bank, is liable for sales tax claimed by the state to be due it on food and refreshments served and sold by the bank to its employees and guests in a cafeteria maintained by it for the convenience of those so served. In this division the citations of applicable sales tax statutes will be to sections of the South Dakota Code of 1939 (SDC). While there were some amendments, they were not such as to change the result.

SDC 57.3201 provides:

"There is hereby imposed as a tax upon the privilege of engaging in business as a retailer, a tax of three per cent upon the gross receipts from all sales of tangible personal property * * * sold at retail in the state of South Dakota to consumers or users."

SDC 51.3202(1) exempts sales which the state is prohibited from taxing under the Constitution and laws of the United States.

12 U.S.C.A. § 548, U.S.R.S. § 5219, as last amended by 44 Stat. 223 permits state taxation as follows:

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause."

Subdivision (c) places certain limits on income taxes and requires they shall not be higher on banks than other fin-

ancial, mercantile or manufacturing corporations in the state. A state may not tax a national bank except as Congress consents and then only in conformity with the restrictions of that consent, Michigan National Bank v. State of Michigan, 365 U.S. 467, 81 S.Ct. 659, 5 L.Ed.2d 710, reh. den. 365 U.S. 874, 81 S.Ct. 900, 5 L.Ed.2d 864; First National Bank of Guthrie Center v. Anderson, 269 U.S. 341, 46 S.Ct. 135, 70 L.Ed. 295; Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191, the limits of which are set out in § 5219, supra. Decisions of the United States Supreme Court interpreting the United States Constitution are binding on this court. Mitchell Publishing Co. v. Wilder, 74 S.D. 343, 52 N.W.2d 732. Its decisions construing congressional acts are of like effect.

SDC 57.3201 clearly imposes the sales tax on the retailer. The court so determined in State ex rel. Sioux Falls Motor Co. v. Welsh, 65 S.D. 68, 270 N.W. 852, when it wrote:

"The fact must be kept in mind that the tax with which we are dealing is an excise or privilege tax imposed upon the privilege of engaging in an occupation. It is not a tax upon gross receipts as such, but gross receipts * * * is used as a measure to determine the amount of tax to be paid for the privilege of engaging in an occupation or business."

This was repeated in Vinz v. Nord, 70 S.D. 304, 17 N.W.2d 299, where the court then said:

"By an authorized procedure of adding the average equivalent [of the tax] thereof to the purchase price of goods the incidence of the tax is shifted to the consumer, but nevertheless the **burden of liability** therefor **rests upon the retailer,** SDC 57.3304." (Emphasis supplied)

SDC 57.3304 does not **require** the tax to be added to the sale price or charge, it merely **permits** or authorizes that procedure. Plainly written, a retailer who sells tangible personal property to a consumer or user thereof is liable for the tax due (SDC 57.3201) in the amount shown in his return (SDC 57.3302) and for failure to file the return or pay the tax is subject to severe pen-

U.S.R.S. § 5219, it cannot be sustained as to the sales made by it. This result is in accord with the conclusion of New York courts. The Court of Appeals had earlier decided that where the state sales tax by its terms **must** be passed on to the purchaser, separately stated—the legal incidence of the tax was on the purchaser. Fifth Avenue Building Co. v. Joseph, 297 N.Y. 278, 79 N.E.2d 22; Kesbec, Inc. v. McGoldrick, 278 N.Y. 293, 16 N.E.2d 288, 119 A.L.R. 536. So construed, a national bank was held not liable for similar local sales tax on **purchases** made by it. Liberty National Bank & Trust Co. v. Buscaglia, 26 A.D.2d 97, 270 N.Y.S.2d 871.

II. The Use Tax law as to supplies purchased.

Though the briefs have only discussed the sales tax, the state claims the bank is liable for and collected use tax based on purchases of material and supplies made by it outside the state and shipped into the state for use in its banking business. Pertinent sections of South Dakota "use" tax statutes are set out hereafter.

SDC 1960 Supp. 57.4302(3) " 'Purchase' means any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, for a consideration. * * *

"(6) 'Retailer' means and includes every person engaged in the business of selling tangible personal property for use, storage or other consumption * * *

"(7) 'Retailer maintaining a place of business in the state' or any like term shall mean and include any retailer having or maintaining within this state * * * an office * * * or other place of business".

SDC 1960 Supp. 57.4303(1) "An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after the effective date of this section for use in this state at the same rate of per cent of the purchase price of said property as is imposed by SDC 57.3201 (South Dakota Sales Tax Act). * * *

"(3) In addition, said tax is hereby imposed upon every person using, storing, or otherwise consuming such property within this state until such tax has been paid directly to a retailer or the Commissioner of Revenue as hereinafter provided."

SDC 1960 Supp. 57.4304 "The use in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter.

"(1) Tangible personal property, the gross receipts from the sale of which are to be included in the measure of the tax imposed by (South Dakota Sales Tax Act) * * *

"(3) Tangible personal property, the storage, use or other consumption of which this state is prohibited from taxing under the Constitution or laws of the United States of America".

SDC 1960 Supp. 57.4306 "The tax herein imposed shall be collected in the following manner:

"(1) The tax upon the use, storage or other consumption of all tangible personal property which is sold by a retailer maintaining a place of business in this state * * * shall be collected by such retailer * * *

"(3) The tax upon the use, storage or consumption of all tangible personal property not paid pursuant to subsections (1) and (2) hereof shall be paid to the Commissioner of Revenue directly by any person using such property within this state, pursuant to the provisions of section 57.4311."

The use tax had its origin in Chapter 276, Session Laws of 1939. Section 3 thereof then contained only the present subsections (1) and (3) of SDC 1960 Supp. 57.4303 when Scandrett v. Nord, 70 S.D. 527, 19 N.W.2d 344, was decided. The court wrote "The Use Tax Act of 1939 imposes an excise tax upon the privilege of using, storing and consuming in this state tangible personal property". The court was undoubtedly referring to the two sub-

sections just mentioned which remain in our law. This therefore is an attempt to levy a tax on the use, storage or other consumption of material and supplies for use by the bank in its banking business, and as SDC 1960 Supp. 57.4306(3) requires the bank as a user to pay the tax directly to the Commissioner of Revenue, it is a tax proscribed by U.S.R.S. § 5219.

■ We conclude the state may not, as to a national bank, levy and collect a sales tax on the property it sold nor a use tax on the property it bought.

III. The Use Tax law as to food sold.

While the bank is not liable for the sales tax on food sold, it does not follow it can recover the $1,073.19 paid the state as such tax. In our opinion the bank was and is liable to pay a use tax (which is at the same rate as the sales tax) on the food and refreshments it sold, and so may not recover the amounts so paid. As counsel have not considered this feature, it is necessary to refer to some other statutes and the reasoning by which that result is reached. The Use Tax Act of 1939 includes the following:

> SDC 1960 Supp. 57.4307 "Every retailer maintaining a place of business in this state, and making sales of tangible personal property for storage, use or other consumption in this state * * * shall, at the time of making such sale, * * * collect the tax imposed by this chapter from the purchaser".

> SDC 1960 Supp. 57.4309 "The tax herein required to be collected by any retailer pursuant to sections 57.4307 and 57.4308, and any tax collected by any retailer pursuant to said section, shall constitute a debt owed by the retailer to this state."

■ Commentaries on the purposes of the use tax may be found in many opinions. See Holloway v. State, 262 Ala. 437, 79 So.2d 40; Bank of America, etc. v. State, 209 Cal.App.2d 780, 26 Cal.Rptr. 348, and cases cited under West Key No. Licenses

15.1(2). In addition to raising money it is to help the retailers in this state, who are subject to the sales tax, compete on an equal footing with out-of-state competitors.

SDC 1960 Supp. 57.4303 is broad in coverage, subsection (1) including property purchased for use in this state, (2) property not originally purchased for use in this state and thereafter used therein, with both levies being on the privilege of use, storage and consumption, for which terms the word use is sometimes substituted in this opinion. Subsection (3) in addition to the above imposes the tax on every person using such property within the state until such tax is paid directly to a retailer or the Commissioner.

The use tax complements and supplements the sales tax (Roberts, J., dissenting in Mitchell Publishing Co. v. Wilder, 74 S.D. 343 at 347, 52 N.W.2d 732 at 734; Southern Pacific Co. v. Gallagher, infra, and cases above cited) by imposing upon those subject to it a tax burden equal to the sales tax in order that property sold or utilized in this state would be taxable once for support of state government. It is not intended to apply to property subject to the sales tax. SDC 1960 Supp. 57.4304(1) specifically exempts those transactions.

The import of the California use tax law and indeed the wording of many of the statutes set out in a footnote to the Bank of America opinion, supra, are much the same as our use tax act. The logic and reasoning of that opinion appear sound and so comparisons will be made of the California Revenue and Taxation Code sections cited first and our comparable statutes, all in SDC 1960 Supp.

Sections 6201, 6202 and 57.4303 impose the tax on the user and make him liable for the tax; Sections 6203 and 57.4307 both require that every retailer maintaining a place of business in this state and making sales of tangible personal property for use in the state "shall, at the time of making such sale * * * collect the tax * * * from the purchaser" (S.D.); Sections 6204 and 57.4309 state the tax required to be collected by any retailer pursuant to the last mentioned section shall "constitute

a debt owed by the retailer to this state" (S.D.); Sections 6006, 6007, 6014 and 6015 define a "Sale", "Retail sale", "Seller" and "Retailer" respectively while 57.4302(3), (6) and (7) define a "Purchase", a "Retailer" and a "Retailer maintaining a place of business in the state". Finally Sections 6401 and 57.4304(1) exempt items subject to sales tax from the ·use tax.

■ ■ It can hardly be disputed the bank is a retailer maintaining a place of business in this state, that patrons of the cafeteria were purchasers of the food and refreshments from it, that such items were sold for their use and consumption, that such purchasers were primarily liable for the tax imposed on them and were not exempt from the tax for any reason. It became the duty of the bank to collect the use tax from the purchaser (SDC 1960 Supp. 57.4307) and the tax which it was required to collect became a debt of the bank as retailer (SDC 1960 Supp. 57.4309). Where collection is not made, the retailer is liable for default in performance of its duty as such. Bank of America, etc. v. State, supra. Failure of the bank to collect the use tax is no defense as it was under duty to do so and became indebted to the state in the amount thereof.

■ As we view the record no claim is made of unconstitutionality of the use tax act or its application to the bank, except as may be otherwise here mentioned. Challenges to its constitutionality as violations of the commerce and due process clauses of the Constitution of the United States and for other reasons have been of no avail. Felt & Tarrant Mfg. Co. v. Gallagher, 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. 488; Southern Pacific Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586; Douglas Aircraft Co. v. Johnson, 13 Cal.2d 545, 90 P.2d 572.   ·

■ In Felt & Tarrant a nonresident Illinois corporation brought suit to restrain defendants from enforcing the California Use Tax Act claiming they could not compel it to serve as agent to collect the tax. The Supreme Court denied the relief sought quoting from an earlier opinion:

" 'Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent

for that purpose. This is a common and entirely lawful arrangement. * * * the requirement that the appellant as the shipper into Iowa shall, as agent of the state, report and pay the tax on the gasoline thus coming into the state for use by others on whom the tax falls imposes no unconstitutional burden either upon interstate commerce or upon the appellant.' "

That a national bank may be made the agent of the state to collect a valid tax imposed on a third person with whom it deals seems to be implicit in the decision in Colorado National Bank of Denver v. Bedford, 310 U.S. 41, 60 S.Ct. 800, 84 L.Ed. 1067, which cited First National Bank of Louisville v. Commonwealth of Kentucky, 9 Wall. (US) 353, 19 L.Ed. 701, with approval. In the Kentucky case the state laid a tax on bank shares and required the bank's cashier to pay it. The bank refused payment. On this issue the Bedford opinion commented:

"It was decided * * * that the state in a legal proceeding against the shareholder could have garnisheed the bank and that because the bank was a federal instrumentality was no reason for not requiring it to **collect and pay** over the money from the shareholder." (Emphasis supplied)

The obligation of the bank is not to pay the use tax as such. We have held the use tax may not be imposed on a national bank. The obligation of the bank is to collect the tax from the taxpayer it serves and pay that amount to the state. This is a debt owed the state and so is not within the proscription of U.S.R.S. § 5219. Bank of America, etc. v. State, 209 Cal.App.2d 780, 26 Cal.Rptr. 348. We hold the bank is liable as debtor to the state in the amount of use tax it failed to collect and pay over to it. It is therefore unnecessary to discuss the effect of SDC 1960 Supp. 57.30A08.

The questions involved on this appeal were based on stipulated facts which only present questions of law. A right result will not be overturned though based on a wrong reason. Holmes v. Miller, 71 S.D. 258, 23 N.W.2d 794, and cases cited in SDC Vol. 4, page 365. From the record it appears the amount

of the use tax ($1,073.19) due the state from plaintiff bank and which it failed to pay is equal the amount it erroneously paid as sales tax, so the judgment denying recovery thereof is affirmed. The judgment denying recovery of the $1,320.48 paid by plaintiff bank as use tax and penalty on materials and supplies purchased outside the state for use by it in its banking business is reversed with directions to enter judgment for plaintiff in that amount. No costs are to be taxed.

ROBERTS and HANSON, JJ., concur.

HOMEYER, P. J., and RENTTO, J., not participating.