J. D. EVANS EQUIPMENT COMPANY, Appellant v.
STATE ex rel. BENDER, Respondent

(230 N.W.2d 237)
(File No. 11265. Opinion filed June 12, 1975)

Joseph M. Butler and Allen G. Nelson, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff-appellant.

Kermit A. Sande, Atty. Gen., Pierre, John Dewell, Asst. Atty. Gen., Pierre, for defendant-respondent.

WOLLMAN, Justice.

Plaintiff has appealed from a judgment of the circuit court that affirmed a determination by the deputy commissioner of the South Dakota Department of Revenue that plaintiff owed some $12,809.72 in use taxes. We affirm.

Plaintiff is a South Dakota corporation engaged in the selling of heavy construction equipment within the State of South Dakota. It purchases new equipment from out of state manufacturers. Although plaintiff contends that it is not a leasing company and does not purchase equipment for the purpose of leasing it, the record reveals that during the period covered by the audit conducted by the Department of Revenue plaintiff had leased equipment to several counties and private contractors within the state. Some of the leases were oral; those in writing were on printed forms prepared by plaintiff.

The deputy commissioner found that the leases contained no written option to purchase the equipment described therein and that there was no evidence of such purchase agreements. At the hearing before the circuit court, plaintiff introduced form letters signed by representatives of the lessee counties and contractors to

the effect that they had been advised at the time the lease agreements were entered into that the rentals could be applied towards purchase of the leased equipment.

Plaintiff's sales manager testified that written options to purchase were not included in the written leases for two reasons: to enable plaintiff to recover from the bonding companies in those instances in which contractor lessees default on their obligations, and to accommodate those contractors who desire to charge off the rental payments on the equipment as expenses for income tax purposes. We note, as did the trial court in its memorandum opinion, that at least two of the printed leases in question contained a clause giving the lessee the option to apply a portion of the rentals towards the purchase price of the equipment. This clause had been lined through in ink on both of these leases.

■ The finding by the deputy commissioner that the leases contained no options, either written or oral, to purchase the equipment was not unsupported by substantial evidence on the whole record. The trial court correctly affirmed this finding. SDCL 1-26-36.

The deputy commissioner imposed the use tax on the leased equipment on the basis of SDCL 10-46-1(2) and SDCL 10-46-2.

SDCL 10-46-1(2) provides that:

" 'Use' means and includes the exercise of right or power over tangible personal property incidental to the ownership of that property, except that it shall not include the sale of that property in the regular course of business."

SDCL 10-46-2 provides that:

"An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after July 1, 1939, for use in this state at the same rate of per cent of the purchase price of said property as is imposed by §§ 10-45-2 and 10-45-3 or amendment which may hereafter be made thereto."

Plaintiff contends that the purpose of the use tax is to tax sales that cannot for constitutional reasons be taxed under the sales tax law. This purpose was recognized by the court in Northwestern National Bank of Sioux Falls v. Gillis, 82 S.D. 457, 148 N.W.2d 293, where it was stated that in addition to being a source of revenue, the use tax helps South Dakota retailers, who are subject to the sales tax, compete on an equal footing with out-of-state competitors.

Granting that the use tax complements and supplements the sales tax, Northwestern National Bank of Sioux Falls, supra, SDCL 10-46-1(2) and 10-46-2 do not by themselves grant an exemption to anyone bringing property into the state for use within the state.

■ We note that the legislature in 1973 added a section to the use tax law exempting the leasing of farm machinery from the use tax and subjecting the gross receipts from such leases to a tax at the same rate as the sales tax. SDCL 10-46-17.1. (Ch. 63, § 1, Laws of 1973). One can infer from this statute that the legislature recognized that the leasing of tangible personal property is a taxable event under the use tax law. [1]

■ Plaintiff's argument that double taxation results from imposing the use tax upon the leased equipment and then imposing the sales tax upon the gross receipts from the subsequent sale of the equipment overlooks the fact that there were two separate transactions involved here. The first, the lease, subjected plaintiff to liability for the use tax. The second, the sale, resulted in the imposition of the sales tax, which plaintiff collected from the purchaser. [2] Because the leases and the subsequent sales were separate, distinct transactions, the more so because of plaintiff's

---

1.  We note that the legislature in 1974 amended SDCL 10-45-5 to impose a tax on rentals of personal property: "There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the gross receipts of any person from engaging or continuing in any of the following businesses or services in this state:  *  *  *  rentals of tangible personal property except mobile homes  *  *  *  "  SDCL 10-45-5, as amended by Ch. 100, Laws of 1974.

2.  If the sale was to a political subdivision of the state, no sales tax would be collectible. SDCL 10-45-10.

willingness to accede to the private contractors' desire to cast the transactions into the form of leases, the exemption from the use tax provided by SDCL 10-46-6 does not apply, Cf. Pioneer Markets, Inc. v. Commissioner of Revenue, 85 S.D. 24, 176 N.W.2d 477.

Plaintiff relies heavily upon the case of Herman M. Brown Co. v. Johnson, 248 Iowa 1143, 82 N.W.2d 134. In that case, however, the court concluded that the heavy construction equipment had not been brought into the state for use in the state but rather had been purchased by the dealer for the purpose of selling it at retail. Moreover, the leases, both written and oral, entered into by the dealer and the lessees provided that the lessee could apply a percentage of the rentals against the purchase price of the equipment—in other words, the leases were lease-purchase contracts.

█ In the instant case, the record supports the finding that there was no lease-purchase option and that plaintiff was engaged in leasing the equipment in question. Had the leases contained a purchase option, the deputy commissioner, following the Department's regulation, based upon the statutes, would have imposed the sales tax on the rental receipts as they were collected from the nongovernmental subdivision lessees. Because there were no such purchase options in the leases, and because the leasing of the equipment constituted a use of tangible personal property by plaintiff within the meaning of SDCL 10-46-1(2) and 10-46-2, the deputy commissioner was correct in imposing the use tax upon the transactions in question.

The judgment is affirmed.

DUNN, C. J., and WINANS and DOYLE, JJ., concur.

COLER, J., dissents.

COLER, Justice (dissenting).

Oliver Bender, then Deputy Commissioner of Revenue, in his Findings of Fact and Conclusions of Law dated April 20, 1972, as noted by the trial court some twenty months after the hearing before him, stated that the taxpayer was involved in leasing

personal property and this constituted a taxable use under SDCL 10-46. Mr. Bender further stated that since there was no provision in the leases for converting them to lease purchase agreement instruments the use tax applied to the entire value whether or not the machines were later sold and regardless to whom they were leased or later sold. This is in keeping with Mr. Bender's letter of August 4, 1970, wherein he stated:

"Area I New Equipment—Non-licensed

A. Dealer has a use tax liability where equipment is leased without an option to purchase."

I submit that this letter is a declaratory ruling within the meaning of SDCL 1-26-15 and must be considered in connection with agency rules to determine tax liability as nothing within SDCL 10-46 clearly measures the extent of liability.

The majority opinion makes reference to later legislative acts regarding the recognition of the tax status of rentals.[1] The authority to tax must flow from statute not from the rule of an agency. If the court implies that later legislative enactments constituted a ratification of what the department had been doing it would have the same effect as finding that the legislative enactments were somehow retroactive which would be inconsis-

---

1. As to spontaneous legislative recognition of at least a sometime tax levy arising out of leasing of tangible personal property, I do not agree that Senate Bill 87, which was the source of the 1974 amendments to SDCL 10-45-5, sponsored as it was by the respective chairmen of the senate and house committees on taxation, was anything other than a department instigated bill. Such is the usual ploy of departments of state government to secure favorable and early consideration of their proposals. If this is doubted the minutes of the Senate Standing Committee on Taxation dated January 23, 1974, on file in the office of the Legislative Research Council, lists as speakers on behalf of the bill two of the top Department of Revenue lieutenants and the bill promptly moved out of committee do pass on an 8 to 1 vote. I would in no way intimate that the amendment has any bearing on the matter before us. Numerous problems arose with the advent of the tax on services as the court recognized would be true in Berdahl v. Gillis, 1965, 81 S.D. 436, 136 N.W.2d 633. Prior to the 1974 amendments to SDCL 10-45-5 rental and service agreements now in vogue, with such things as water softeners and typewriters being commonly leased with service, without also taxing both, would terribly burden the department to determine the true allocation of charges between the two factors to assess and collect a fair return on such transactions.

tent with SDCL 2-14-21 and that series of cases cited. In Re Scott's Estate, 1965, 81 S.D. 231, 133 N.W.2d 1. Indeed if the opinion gives the amendments retroactive effect it is of doubtful constitutionality, Sutherland Statutory Construction 4th Ed., § 41.10.

In my opinion the Department of Revenue has assumed too much from or read too little of Berdahl v. Gillis, 1965, 81 S.D. 436, 136 N.W.2d 633, as to their power to interpret and construe statutory provisions. Rather than clarify they have attempted to exercise a legislative function. The legitimate interest of the department was to provide a basis for determining the extent of use by the plaintiffs of the property while it was the subject of a lease without a coupled right of purchase. This court most recently stated in State v. Smith, 1974, 88 S.D. 76, 216 N.W.2d 149, that:

> "While the general rule is that purely legislative powers cannot be delegated, quasi-legislative powers subject to ascertainable standards and guidelines can be delegated for the purpose of carrying legislation into effect." (citations omitted)

If any tax is appropriate here, where it is uncontroverted that all of the equipment subjected to the tax in this case was ultimately sold and the sales tax collected and paid thereon, the authority of the commissioner necessarily would flow from the provisions of SDCL 10-46-40. Contrary to the plain import of that statute, the state takes the position that the plaintiff is the ultimate consumer and the use tax then falls on the lessor as the user and therefore denies the lessor, as retailer, any opportunity to pass the tax on to the consumer, particularly exempt organizations. The state attempts to extend the plain language of Servall Towel & Linen Supply Co. v. Division of Taxation, 1969, 84 S.D. 107, 168 N.W.2d 365. That case is readily distinguishable because the towels were not ultimately sold but in the course of time consumed in the service offered. The heavy equipment as indicated above, which is the subject of this action, was indeed not consumed but sold at retail.

The state cited in the original hearing, as authority for

imposition of the tax § 10-45-201.S² of Regulations 72-2 of the department and has cited, on appeal, two other sections, namely §§ 10-46-102.U³ and 10-46-108.Ū⁴ as a basis for tax liability. These rules, interestingly enough, illustrate the department's lack of understanding of and distinction between the two taxes as they treat sales tax and use tax as being synonymous despite the clear difference inherent in law. Although the letter designations in the regulations indicate "S" for sales tax and "U" for use tax the department represents that all three rules apply to the use tax imposed. Contrary to the plain import of SDCL 1-26-6.1 these

---

2. "10-45-201.S RENTALS

Gross receipts representing payments for rental of real or personal property are not within the Act. One exception to this rule, however, is in a case where tangible personal property is delivered to a customer or user under an agreement whereby the so-called rental payment may, at the option of the customer, be applied on the purchase price. The use of rental contracts which are in reality conditional sales contracts will not be permitted to defeat collection of the tax on transactions involving tangible personal property.

A person who acquires tangible personal property and rents or leases such property, the receipts of which are not subject to sales tax, must pay the use tax on the cost of such property unless the South Dakota sales or use tax has been paid to a licensed vendor."

3. "10-46-102.U USE TAX—IMPOSITION

An excise tax is imposed on the privilege of the use, storage and consumption in this state of tangible personal property purchased for use in this state at the same rate of per cent of the purchase price of said property as is imposed under the Sales Tax law. The 2% use tax rate applies to new farm machinery.

An excise tax is imposed on the privilege of the use, storage and consumption in this state of tangible personal property not originally purchased for use in this state, but thereafter used, stored and consumed in this state, at the same rate of percent of the fair market value of said property as is imposed under the Sales Tax Law. The 2% use tax rate applies to farm machinery not originally purchased for use in South Dakota.

In addition, said tax is imposed upon every person using, storing, or otherwise consuming such property within this state until such tax has been paid to a retailer or the Department of Revenue."

4. "10-46-108.U RENTAL OF PROPERTY

Where tangible personal property is leased or rented in this State the rental receipts are not subject to the South Dakota Sales or Use Tax. The lessor who is the person owning the property must pay use tax on the purchase price of property purchased for leasing in this State or pay use tax on the fair market value of property not originally purchased for use in this State, unless the South Dakota Sales or Use Tax has been paid to a licensed vendor on such property."

rules merely paraphrase statutory provisions. These rules do not either refer to or implement the law. Until the rules were refiled by the department in 1974 there was no attempt made by it to conform to the provisions of SDCL 1-26-6.2 or the predecessor of that statute, SDC § 65.0106, 2nd par., to identify the source of the department's authority to promulgate rules, and, under the latter act to identify the particular provision of statute to be implemented. It is interesting to note that rules 10-45-201.S and 10-46-102.U have been omitted in the manuscript of agency rules to be published by the South Dakota Code Commission pursuant to SDCL 1-26-9. Rule 10-46-108.U has been recast to provide for taxability of rentals, ARSD 64:09:01:10. ARSD 64:09:01:10 as now published does not indicate that it implements SDCL 10-45-5. Had the department under the authority of SDCL 10-46-40 promulgated a rule to establish a measure of the plaintiff's use, whether by reduction in value, the actual rental received, or any other logical basis, they would not have been engaging in legislative action, or making an administrative guess at a judicial question, within the plain language of Berdahl v. Gillis, supra. Whether or not the rule of construction of the statutes involved is governed by the liberal construction rule of SDCL 2-14-12, the rules promulgated by the department under authority of law must bear more than a cursory examination by this court. Sutherland Statutory Construction 4th Ed., § 66.05.

The privilege of use is clearly taxable under SDCL 10-46-3. However, "use" as defined by SDCL 10-46-1(2), as to the plaintiff in this action, would necessarily be limited to that period of time the plaintiff exercised the right or power over the nonconsumable property as lessor. Such exercise of the right or power certainly terminated with sale so the beginning and ending date of use can be established. I have no doubt that if it had complied with SDCL 10-46-40 the department could have established a reasonable measure of the use upon which to impose the excise tax on the privilege of the use by the plaintiff. SDCL 10-46-3, 10-46-4. Since the Department of Revenue totally failed to adopt a rule to implement the law, as distinct from paraphrasing the law for its own purposes, I would reverse the judgment and the

findings and conclusions of the commissioner and remand with instructions to refund to plaintiff the "rental tax" of $8,883.61 erroneously paid by the plaintiff and retained by the department.